McBRIDE, Judge.
This case comes before us .on plaintiff’s appeal from an adverse judgment. The trial judge in his reasons for judgment has so well stated the case and discussed and decided the issues it presents, we now adopt those reasons as our own judgment.
“Plaintiff, a real estate broker, demands a commission of $1,420.00, plus $355.00 attorney’s fees, for procuring a purchaser for defendants’ property, to whom defendants ultimately made a sale. The facts are these:
“Plaintiff’s employee (Polito) secured an exclusive listing contract from defendants, dated November 9th, 1953. Polito had previously done business with defendants. The contract contained tw.o periods, a primary 30-day term (expiring December 9th, 1953) giving plaintiff the exclusive right to sell; and a secondary term of 45 days (expiring January 23rd, 1954) providing that, should defendants sell the property within such period to any prospect furnished by plaintiff during the first 30-day period, plaintiff would be entitled to the stipulated commission. The property was listed for sale at $39,500.00.
“On November 29th plaintiff submitted to defendants a written offer for $32,000.00 from one Riccobono, but defendants promptly rejected it.
“On January 28th Riccobono made another written offer, which defendants accepted on January 30th, on which latter date Riccobono gave his check for $3,300.00, representing 10% of the purchase price of $33,000.00.
“On January 15th (Ex. P-2) plaintiff’s attorney wrote defendants claim *117 ing a sale to Riccobono and that, if so, his client was entitled to a commission. Defendant (Sarrazin) admitted receipt of the letter, but paid it no attention because the 30-day period had expired. Plaintiff’s attorney wrote to defendants again on January 25th (Ex. P-3) threatening suit unless he had a reply to his letter of January 15th. On January 28th (Ex. P-4) defendants’ attorney replied that he was retained and requested a copy of the listing contract, which plaintiff’s attorney forwarded with his letter of January 30th, (Ex. P-5).
“While there was no allegation of fraud against defendants in the pleadings, and plaintiff’s counsel in oral argument conceded defendants’ good faith, he nevertheless insists that defendants completed all details of the sale to Riccobono within the secondary 45-days, but delayed executing the written agreement until January 28th, after the 45 days had expired, to evade payment of the commission. This position is rather inconsistent. If defendants actually made the sale to Riccobono within the 45-day period, but waited until it had expired before completing formal agreement in order to defeat plaintiff’s claim, they practiced a fraud on plaintiff, and would owe the commission. However, if defendants waited until the expiration of 45 days before dealing with Riccobono, they were well within their contractual rights, and would owe no commission.
“Riccobono, certainly without any interest testified that plaintiff’s man (Aicklen) took him to see the premises, and he made his offer on November 29th for $32,000.00, which was rejected, and though Aicklen tried to get him to increase his offer, he refused; that on January 28th he passed the property, saw a for sale sign on the house giving the names and telephone numbers of defendants. He contacted one of them resulting in a call at his home on January 28th, and his offer to purchase for $33,000.00.
“Riccobono and defendants insist the contract between them, which resulted in the sale, took place on January 28th, and not before.
“However, counsel for plaintiff suggests his letter of January 15th alerted defendants to the 45-day period, which they had forgotten, so they suspended completion of the negotiated deal with Riccobono until January 28th. Further, plaintiff’s counsel argues that the passage of the sale on February 9th, 10 days later, proves the deal was completed long before January 28th since a transaction such as this takes two or three weeks, at least, to complete. Ordinarily, this argument would be persuasive, but here defendants were engaged in the multiple building and selling of homes, financed by Jackson Homestead Ass’n. The title was taken in the name of the Jackson Homestead for account of defendants. Since that Homestead retained the loan for Riccobono, all the parties had to do was to go to the Homestead’s notary and complete the transfer from Jackson to Riccobono. Had another association handled the sale and loan for Riccobono, their attorney would have examined title with two or three weeks delay.
“Certainly, the Jackson Homestead would not have made the construction loan in the first place and retained title in its name unless its attorney had first approved the title. So it was a simple transaction to transfer title from the Homestead to Riccobono.
“Whether plaintiff was the procuring cause that entitles him to a commission, must be tested by the terms of the listing contract and the facts. The contract must be divided into three periods:
*118 “(1) The exclusive period of 30 days, during which the broker was entitled to a commission, whether he made the sale or the owner made it direct;
“(2) The following 45 days, during which the broker would be entitled to a commission only if the owner sold it to a prospect to whom broker had offered it during the 30-day period;
“(3) After the expiration of the 45-day period, the owner was free to sell it to anybody, without liability for the commission, unless the sale was, in fact, the mere formal closing of negotiations carried on within the 45 days with one of the broker’s prospects.
“There is no reason why an owner cannot stand by, do nothing until after the 45 days have expired, and sell his property to the broker’s prospect. The parties are bound by their contract. Lewis v. Manson, 132 La. 817, 61 So. 835; Lawrence v. Bailey, La.App., 41 So.2d 474.
“Defendants took the risk of having to pay a commission during the first 30 days, even though plaintiff had nothing to do with procuring the purchaser, so there is no reason why plaintiff should not risk his prospect being sold by defendants without liability for the commission after the 45th day.
“By stipulation between the parties after the case was submitted, the following stipulation was agreed upon and admitted in evidence with reference to additional testimony, to-wit:
“ ‘That if Andrew Montz, the manager of the Central Appraisal Bureau, had been called as a witness in this cause, he would have testified that the records of his office indicate that the property involved in this law suit was appraised by the Central Appraisal Bureau on May 20,1953 for $29,550.00; that on January 11, 1954 acting upon a request received by them on January 6, 1954, from Jackson Homestead, the subject property was appraised by the Central Appraisal Bureau for $32,000.-00; that on January 13, 1954, acting upon a verbal request from the Jackson Homestead for a review of said appraisal, the Central Appraisal Bureau appraised the subject property for $32,900.00.’
“This stipulation adds nothing of particular importance to the evidence already taken, except that it admits on January 6, 1954, the Jackson Homestead asked for an appraisal by the Central Appraisal Bureau, which appraises all properties for building and loan associations in New Orleans. It merely creates a suspicion that in anticipation of selling the property to Ric-cobono after the 45 days, the defendants sought a reappraisal to be sure that the price of $32,000.00 that Ricco-bono had originally offered through the plaintiff was a proper price to sell.
“If the evidence satisfied me\ that defendants had completed all details with Riccobono during the 45-day period, but colluded with him to postpone formal agreement until the 45 days expired, in order to defeat plaintiff’s claim for a commission, I wouldj give judgment for plaintiff. However” I am satisfied from the evidence that defendants had no contact with Ricco-bono until January 28th, even though they may have been alerted not to deal with him by counsel’s letter of January 15th.”
The judgment appealed from is affirmed.
Affirmed.